IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROY TODD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:05-CV-223 |
| | § | |
| ALCATEL USA RESOURCES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER GRANTING
DEFENDANT ALCATEL USA RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Before the court are "Defendant Alcatel USA Resources, Inc.'s Motion for Summary Judgment and Brief in Support" ("Motion") (docket entry #20), "Plaintiff Roy Todd's Amended Response to Defendant Alcatel USA Resources, Inc.'s Motion for Summary Judgment and Brief in Support" ("Response") (docket entry #28), and "Reply Supporting Defendant Alcatel USA Resources, Inc.'s Motion for Summary Judgment" ("Reply") (docket entry #25). Having considered the motion, the response, and the reply, the court is of the opinion that the motion should be granted.

**BACKGROUND**

Plaintiff Roy Todd ("Todd") brought suit against Defendant Alcatel USA Resources, Inc. ("Alcatel") alleging that he suffered age discrimination and retaliation at the hand of Alcatel. Todd also brought claims of intentional infliction of emotional distress and negligent supervision and retention against Alcatel. Alcatel moved for summary judgment on all claims. In his Response, Todd conceded the correctness of Alcatel's arguments on the claims for intentional infliction of emotional distress and negligent supervision and retention, leaving only the age discrimination and

-1-

retaliation claims pending.

Alcatel hired Todd on June 14, 1994, as a Price Proposal Analyst IV in the Contracts Group and in June 2002, renamed his position to Contracts Manager.  Todd Dep. 19:14-20:11.  Due to a downturn in the telecommunications industry, Alcatel restructured their Contracts Group with Bob Henry ("Henry") becoming the vice president and John Garcia ("Garcia") becoming the new director. Motion, ¶ 3.  As part of this restructuring, Henry changed the duties of the Contracts Group members, requiring more thorough documentation of each contract, which included group members writing a brief that outlined the standard terms and that detailed approval for the non-standard terms for each contract.  *Id.* ¶ 4.  While some members of the group adapted quickly to these changes, others did not.  Todd did not adapt easily to the changes and was given a documented oral warning by Garcia.  Todd Dep. 84:6-9.  Todd responded well to this warning, improving his performance and receiving a promotion to Senior Contracts Manager on January 23, 2003. Todd Dep. 21:19-22.

After his promotion, Todd's performance problems resurfaced.  Todd insisted, however, that it was because he had too much work and it was impossible for him to complete it all.  Todd Dep. 56:5-16.  In response to his statements, Garcia removed some of Todd's workload, but Todd continued to struggle.  Todd Dep. 128:13-129:25.  In early 2004, Garcia gave Todd an informal warning, citing specific examples of Todd's refusal to follow the Contracts Group's mandatory procedures.  Todd Dep., Ex. 8.  In response, Todd maintained that he was not refusing to follow the procedures, but rather he was not able to keep up with the workload.  Todd Dep. 118:6-10.  Because he felt overworked, Todd asked to be laid off, but Alcatel told Todd it was not accepting volunteers for lay-offs and to continue with his responsibilities.  Henry Dep. 107:17-108:19.  Todd claims that he notified Henry of his belief that Garcia was setting Todd up for termination by putting

unreasonable expectations on him. Response, p. 9. Todd further claims that Garcia's primary goal was to create a paper file to "get rid of" Todd. *Id.* Todd's evidence of this accusation is his "ten years of experience at Alcatel" that lead him to believe he was terminated "in relation to age discrimination." *Id.* at 10.

On March 5, 2004, after several encounters with Garcia regarding his poor performance, Todd was placed on a "Performance Improvement Plan" ("PIP"). Henry Dep., Ex. 14. The PIP detailed the performance concerns that Garcia had with Todd and also described what was expected of Todd. *Id.* Todd submitted a rebuttal to the PIP stating primarily that he did not complete his job responsibilities because his workload was too heavy. *Id.* Alcatel contends that even after "coaching" Todd in conjunction with the PIP, Garcia did not feel as though Todd showed improvement or a willingness to improve, and therefore, Todd was terminated on April 23, 2004. Garcia Dep. 218:22-219:12. Alcatel claims that Todd was terminated because of his unsatisfactory performance. *Id.*

While Todd stated in his deposition that he did not have proof of age discrimination or a scheme to terminate all Contracts Group employees over 40, in his Response he references several occurrences as evidence of age discrimination. Throughout his Response, Todd refers to a general scheme to terminate all Contracts Group employees over 40. Todd's evidence of this scheme consists primarily of his ten years of experience with Alcatel and the observations he made during that time frame. Specifically, he points the court to two over-40 employees, Len Calhoun ("Calhoun") and Jack Sineath ("Sineath"), who were in the "crosshairs" before Todd was, and they were laid off and resigned, respectively, before Todd was terminated. Todd Dep. 31:2-16. Todd claims that these men were disposed of in the same manner as he was; that is, they were overworked

to the point that they could not complete their work.  Garcia Dep. 211:14-212:16.  He does not, however, offer evidence from these employees to support this contention.  He did offer Sineath's resignation memorandum and exit interview survey, and while there is mention of Sineath feeling excessive stress and anxiety, neither document mentions being overworked or feeling pushed out of Alcatel.  Response, Exs. 11-12.  The court also notes that Doug Jennings ("Jennings"), who was an employee over the age of 40, informed Alcatel that he was planning to retire, but Garcia asked him to stay at least three to four times.  Jennings Dep. 57:24-58:11.

Todd next points the court to some specific actions which he argues demonstrate age discrimination.  First, while Todd was on the PIP, Todd's position was posted on Alcatel's intranet.  Todd argues this is evidence of discrimination while Garcia stated that it was a mistake.  Response, p. 10-11.  Second, during the PIP, Garcia spent a substantial amount of time reviewing and discussing Todd's work product with him.  Motion ¶ 13.  Todd argues that such review and analysis was not done to help Todd but rather to harass him.  *Id.*; Todd Dep. 95:19-96:5.  Todd also admitted, however, that he thought that the Contracts Group's mandatory requirements were not "smart business decisions," explaining his reluctance to meet them.  Todd Dep. 92:1-93:25.  Third, as evidence that Todd performed well as an employee, he points to the two High 5 Recognition awards he received while at Alcatel, one in June 2003 and the other in May 2000, and also to his promotion to Senior Contracts Manager.  Response, p. 14.

Finally, Todd points to his discussions with Pat Foster ("Foster"), a human resources manager, claiming that he told Foster many of the same things Todd now tells the court: that he was given too much work in an effort to push him out and that he had more work than one person could complete.  Foster Dep.15:16-23; Todd Dep. 46:4-22.  While Foster admitted to hearing some

-4-

complaints of harassment and to investigating one woman's sexual harassment complaint, he does not recall Todd complaining to him that Garcia was harassing employees in the Contracts Group, aside from what he read in Todd's PIP response. Foster Dep. 25:12-27:22; 22:1-5; 23:18-24.  In his response to the PIP form, Todd wrote that he felt he was being harassed and Foster admits he did not investigate the comments. *Id.* at 29:23-30:2.  As to the intranet posting of Todd's position, Foster states that while it was a mistake, Alcatel had this posting ready in case it did not work out with Todd, given his performance problems. *Id.* at 96:18-24; 99:6-17.

As vice-president of the Contracts Group, Henry stated that the reason why Todd maintained employment with Alcatel for a long period of time was because it took Henry a little longer than usual to determine Todd had performance problems.  Henry Dep. 69:1-24.  As specific evidence of his performance problems, Henry cites Todd's lack of performance, lack of organization, poor documentation of files, and poor attitude. *Id.* Henry claims that the more problems they found with Todd, the closer they would watch him and the closer they watched him, the more performance problems they discovered. *Id.* at 84:9-22.  Finally, Henry admits that Todd was overworked but also argues that everyone in the group was overworked at the time. *Id.* at 88:20-21.  Jennings, another Contracts Group employee, stated that with regard to the five Senior Contracts Managers, he concluded that Todd's workload was fourth in line, with only Calhoun having less work that Todd. Jennings Dep. 46:3-47:9.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *See id.*  The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.  *See id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence.  *See Anderson*, 477 U.S. at 257.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990).  In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant.  *See Anderson*, 477 U.S. at 255. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.*

## DISCUSSION & ANALYSIS

Alcatel has argued that summary judgment is proper on the age discrimination claim because Alcatel terminated Todd's employment for legitimate reasons and Todd has no evidence that his age was a factor in the decision.  Alcatel has argued that summary judgment is proper on the retaliation

claim because Todd did not exhaust his administrative remedies prior to bringing the claim.

A.      Age Discrimination

Under the Age Discrimination in Employment Act ("ADEA"), an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When an employer moves for summary judgment, the plaintiff-employee may defeat the motion in one of two ways: (1) presenting direct evidence that age discrimination was a motivating factor in the adverse employment decision, or (2) establish a "permissible inference of discrimination" by relying on the *McDonnell-Douglas* burden-shifting framework. *Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 837 (N.D. Tex 2006).[1]

If, as here, a plaintiff has not produced direct evidence of discrimination, he may alternatively prove age discrimination via the *McDonnell-Douglas* burden-shifting analysis. The Fifth Circuit employs a "modified *McDonnell-Douglas*" analysis in ADEA cases. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). Under the "modified" approach, the first two steps remain the same as in all other discrimination cases. First, the plaintiff must set forth a *prima facie* case of age discrimination. *Id.* At this stage, the plaintiff must produce evidence that he: (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time he was discharged; and (4) was replaced by someone outside of his protected class, replaced by someone

---

[1] Neither party has argued age discrimination existed or did not exist based upon direct evidence. A cursory review of the evidence shows only one comment that Todd might argue equates to direct evidence. That comment is Garcia's statement that "we have some good experience in here, but we need some fresh ideas." Todd Dep. 80: 8-14. As the comment is not clearly age related and there is no evidence that it was made proximate in time to the termination, the court finds it does not constitute direct evidence of age discrimination. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).

younger, or otherwise discharged for his age.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).  Second, if the plaintiff proves his *prima facie* case, the defendant must then proffer a legitimate, non-discriminatory reason for the termination.  *Machinchick*, 389 F.3d at 352.  The defendant's burden on this issue is low, involving no credibility assessment.  *Acker*, 429 F. Supp. 2d at 840.

Assuming the defendant meets this burden, then the presumption of discrimination disappears and the plaintiff must meet his ultimate burden of persuasion on the third, and final, step of the analysis.  *Sanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  The plaintiff may meet this ultimate burden by offering evidence on one of the two following approaches: (1) that the defendant's proffered reasons are false (pretext approach); or (2) that, even if the defendant's proffered reasons are true, the plaintiff's age was also a motivating factor in the defendant's adverse employment decision (mixed-motives approach).[2]  *Rachid*, 376 F.3d at 312.  In making this evaluation, the court's only question is whether the plaintiff has presented some evidence that the employer's decision as to a particular candidate was motivated by discrimination.  *Id.  Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991).  The plaintiff must provide the court with more than his own subjective belief he was discriminated against.  *See id.* at 96 ("An age discrimination plaintiff's own good faith belief that his age motivated his employer's action is of little value.").

*1.  Prima Facie case*

Alcatel first argues that Todd cannot meet his *prima facie* case for age discrimination.

---

[2]  Todd has only argued that summary judgment is improper under the pretext approach.  Response, p. 1. He does not address the mixed-motives approach in his Response.

Alcatel contends that Todd cannot meet his burden on the second and fourth prongs on his *prima facie* case.  Alcatel argues that Todd cannot meet his burden on the second prong, that he was qualified for the position, because Todd admitted that the workload was too much for him to handle and that he was therefore unable to properly complete his work.  However, it is not clear under the case law which factors the court should consider when determining whether an employee was qualified for his position as part of the *prima facie* case.  The Fifth Circuit has indicated that in the *prima facie* analysis of qualification, the inquiry is limited to matters such as whether the plaintiff has suffered physical disability, loss of a necessary professional license or some other occurrence which would render him unfit for the position for which he was hired.  *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1505 n. 2, n.3; *Pena v. Wyndham Anatole Hotel*, 2005 WL 1500821, *2,  n.3 (June 14, 2005 N.D. Tex.).  The employee's deficiency in performing assigned job requirements is more appropriately addressed in the last step, when the burden shifts to the plaintiff-employee to offer some evidence that the proffered legitimate, nondiscriminatory reason for his termination was pretextual.  *See Bienkowski*, 851 F.2d at 1505 n. 2, n.3; *Pena*, 2005 WL 1500821 at *2,  n.3.  As such, the court will assume that Todd has met his burden of proof on the second element of his *prima facie* case.

Alcatel also argues that Todd cannot present evidence of a genuine issue of material fact on the fourth prong; specifically, that he has no evidence to demonstrate he was terminated because of his age.[3]  In *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005), the court found that the

---

[3]  Todd may prove this fourth prong by proving that he was replaced by someone outside of the protected class, that is, someone under 40, and he appears to argue as much.  He states that he was replaced by one or two women, both in their thirties.  Alcatel disputes this fact and points the court to the confusing and conflicting statements made by Todd in his Response.  The court finds that between the claim that his replacement was under 40 and the other discrimination evidence, Todd meets his burden of proof on the *prima facie* case.

supervisor's description of the plaintiff-employee as having a "'low motivation to adapt' to change,"
as "inflexible" and "not adaptable," and as possessing a "business-as-usual attitude" was sufficient
to give rise to an inference that the plaintiff-employee was terminated because of his age.
*Machinchick*, 398 F.3d at 353.   While this court acknowledges that there was other evidence in
*Machinchick* that also led the Fifth Circuit to find the fourth prong of the *prima facie* case to have
been met, it appears that the court said this evidence alone was sufficient to meet the fourth prong.
*Id.* ("[Defendant's] description of [plaintiff-employee] in both his e-mail and deposition gives rise
to an inference" that the plaintiff-employee was terminated because of his age).   In the instant case
Todd has presented evidence that Garcia stated he wanted some "fresh ideas" to come into the
company to go with the "experience" and that Todd had trouble adapting.   This comment and
description of Todd is not as strong as the statements made in *Machinchick,* but there are also
accusations that Alcatel was overworking Todd and had a scheme to rid the Contracts Group of all
employees over 40.   While it is a close call, the court will assume Todd has presented sufficient
evidence to make his *prima facie* case and proceed with the remainder of the analysis.

> 2.   *Legitimate, Nondiscriminatory Reason*

Assuming that Todd has met his *prima facie* case, Alcatel has met its burden of production
by providing several legitimate, nondiscriminatory reasons for Todd's dismissal.   Alcatel has stated
that Todd's work product was declining, that Alcatel warned Todd of its disappointment with his
work product and that Todd's supervisor, Garcia, tried to "coach" Todd back on track.   Alcatel has
also produced evaluations or warnings, at least one fairly close to Todd's termination, in which it
expressed displeasure with Todd's work product.   Therefore, Alcatel's burden has been met and the
presumption of discrimination disappears.

3.      *False or Pretext Argument*

Todd must now present evidence sufficient to create a genuine issue of material fact showing that Alcatel's stated reasons for terminating Todd were false.  The court finds that he has not met his burden on this element.  To prove discrimination via the pretext method, the plaintiff must "bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." *Acker*, 429 F. Supp. 2d at 842 (citations omitted).  Such a showing by the plaintiff must do more than prove a defendant's proffered reason is unpersuasive or contrived. *Id.*  The evidence the plaintiff offered in *Machinchick* was similar to but more persuasive than what Todd presents in the instant case, yet the Fifth Circuit found that the plaintiff had not raised a genuine issue of material fact as to the pretext method of proving age discrimination.[4] *Machinchick*, 398 F.3d at 354-55.  In *Machinchick*, the plaintiff argued that the defendant's proffered reason for terminating him, which was his alleged failure to adapt to change, was false and offered as evidence the facts that the plaintiff had developed prospective new business, had good performance reviews, and had never received a warning.  *Id.*

In the instant case, Todd did not specifically rebut each proffered reason offered by Alcatel, but he has presented the following as support for his arguments that Alcatel's proffered  reasons for his termination were false: (1) his belief that he was qualified for his job as evidenced by his past positive performance reviews; (2) his belief that a systematic scheme to terminate all employees over 40 existed; (3) his belief that he was given too much work in an effort to make him look bad and "paper" his file; (4) his belief that Garcia watched over him more closely and was more critical of

---

[4]  The Fifth Circuit ultimately found summary judgment based upon the mixed-motives method to be improper, but it found no genuine issue of material fact existed in its pretext analysis.  *Machinchick*, 398 F.3d at 355.

his work than he did or was with other Contract Managers; and (5) the fact that his job was posted on Alcatel's intranet while he still held it.

Todd first argues that because he was qualified for the job in the past and received satisfactory performance reviews, he continued to be qualified for his job at the time of his termination, and therefore, must have been terminated for improper reasons, such as age, and not for poor performance. Todd's receipt of satisfactory performance reviews in the past does not affect the credibility of Alcatel's explanation for termination. *See Weihaupt v. Am. Medical Ass'n*, 874 F.2d 419, 427 (7th Cir. 1989); *Harrison v. Mattel, Inc.*, 927 F.2d 609, 1991 WL 23474, *2 (Feb. 27, 1991 9th Cir.) ("[Plaintiff's] satisfactory record in the past does not affect the credibility of [Defendant's] explanation.").

Todd also contends that there was a systematic scheme to rid the Contracts Group of all employees over 40. For support he offers "statistical" evidence that two employees over 40 were either laid off or resigned from the Contracts Group before Todd because of being overworked. Todd's reliance on *Siler-Khodr* for using statistics as proof, however, is misplaced. In *Siler-Khodr*, the statistics accepted by the court were analyzed data based upon hundreds of employees. *Siler-Khodr v. Univ. of Tex. Health Science Ctr. San Antonio*, 261 F.3d 542, 547 (5th Cir. 2001). Such is not the situation in the instant case. Further, his proof that his termination was part of a systematic scheme is based upon his own opinion and assessment. Such evidence does not meet his burden of demonstrating the existence of a fact issue on pretext. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005); *Little*, 924 F.2d at 96. He also argues that his co-workers agree with his assessments but gives no evidence to support this assertion. Even assuming such an assertion is true, generally, the subjective beliefs of co-workers are not competent evidence of age

discrimination.  *Lind v. UNC, Inc.*, 36 F. Supp. 2d 350, 358-59 (N.D. Tex. 1999).  Also, Todd's reliance on *Hansard* to support the proposition that his co-workers' assessments would be sufficient proof under the circumstances in the instant case is misplaced.  In *Hansard*, another employee testified as to his belief that age motivated the defendant-employer's decision not to hire the plaintiff-employee.  *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.3d 1461, 1465 (5thCir. 1989).  The witness in *Hansard* was an uninterested third party who was familiar with the hiring practices of the company.  *See id.*  Todd has not presented such evidence here.

Todd then argues that he did not complete his work tasks not because he was a poor performer, but because he was given too much work.  He argues that he was given this amount of work in order to push him out of Alcatel.  The court may not second-guess the business decisions made by Alcatel.  *Lind*, 36 F. Supp. 2d at 359.  While it may constitute poor management judgment to overload employees with work, doing so does not indicate age discrimination.  Even assuming that Alcatel gave Todd too much work and responsibility, Todd has not brought forth any evidence that age motivated Alcatel's decision to do so.

To rebut Alcatel's proffered reason for termination that Todd was a poor performer, Todd also points to Garcia's criticism of Todd's work and to the fact that his job was posted on the Alcatel intranet.  Alcatel's response to these arguments is that Garcia was coaching Todd to get him back on track and that the job posting was an error.  Critical performance reviews of an employee that do not reference or any way allude to age are not evidence of age discrimination.  Again, the court may not second-guess the employer's business decisions or management style provided they are accomplished without unlawful discrimination.  Likewise, the intranet job posting is not indicative of discriminatory animus.  Todd has not met his burden to demonstrate a genuine issue of material

fact on pretext.  The arguments he poses are not sufficient to demonstrate that Alcatel's proffered reasons for terminating his employment were false.  Therefore, summary judgment is proper on the age discrimination claim.

## B.   Retaliation

The filing of an EEOC charge is a jurisdictional prerequisite to bringing a Title VII action in federal court.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).  The scope of a Title VII lawsuit is limited to the allegations made in the EEOC charge and any claims that could reasonably be expected to grow out of it.  *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).  If, by looking to either the factual allegations or the checked boxes, a specific type of discrimination claim could reasonably be expected to grow out of the allegations in an EEOC charge, then the plaintiff has exhausted his administrative remedies.  *See Briggs v. DART Regional Rail Right of Way Co.*, 2005 WL 3133505 (Nov. 23, 2005 N.D. Tex.).  The Fifth Circuit has stated that "the crucial element of a charge of discrimination is the factual statement contained therein."  *Sanchez*, 431 F.2d at 462.  Here, not only did Todd fail to check the box marked "RETALIATION" in the "DISCRIMINATION BASED ON" section of the EEOC charge, but he also failed to state any facts under the personal harm section out of which a retaliation claim could reasonably be expected to grow.  The claim mentioned a written warning Todd received, the formal probation he was placed on, his job being posted on the intranet as available before he was terminated, and his inability to access his FlexSpending account funds. Under the section labeled "DISCRIMINATION STATEMENT," he mentions only that he was discriminated based upon his age.  Bob Henry Dec., Ex. (Todd's EEOC Charge).  The words "retaliation" or "retaliate" are not found in his charge.  Were an investigation into the claims stated

in his EEOC charge to be made, a retaliation claim would not reasonably grow out of his allegations. *See Fine*, 995 F.2d at 578.   Therefore, the court finds summary judgment is proper as to Todd's retaliation claim.

CONCLUSION

Having considered the motion, the response and the reply, the court is of the opinion that Defendant Alcatel USA Resources, Inc.'s Motion for Summary Judgment (docket entry #20) should be and is hereby **GRANTED**.   The age discrimination claim is dismissed with prejudice, but the retaliation claim is dismissed without prejudice.   All motions that remain pending are denied as moot.

**SIGNED this the 13th day of April, 2007.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

-15-